**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| TONTALANA DAVIS, | ) | |
| | ) | No. 4:11-cv-03092-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Thomas E. Rogers' Report and Recommendation (R&R) that this court affirm Administrative Law Judge Edward Moriss' (ALJ) decision denying plaintiff's application for Supplementary Security Income (SSI). Plaintiff has filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the ALJ's decision.

## I. BACKGROUND

### A. Procedural History

Tontalana Davis ("Davis") first filed for and began receiving SSI as a disabled child in November 1997. Tr. 141-61. Once she reached the age of eighteen, the agency reassessed her disabled status pursuant to 20 C.F.R. § 416.987. In December 2003, Davis received notice of discontinuation of benefits based upon a determination by the Social Security Administration ("the Agency") that she did not meet the definition of disabled for adults. Tr. 47-49. Davis filed a request for reconsideration, and the Agency again determined that she did not qualify for benefits. Tr. 55-62.

1

The ALJ held a hearing at plaintiff's request in June 2006. Tr. 63-75. On July 18, 2006, he denied her application for benefits and found that she had not been disabled since February 28, 2004. Tr. 34-43. Davis requested review of the ALJ's decision by the Appeals Council. Tr. 76-80. In February 2008, the Appeals Council vacated the decision of the ALJ and remanded the case for further proceedings. Tr. 88-90. The Appeals Council instructed the ALJ to

> Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms . . . . Further evaluate the claimant's mental impairments . . . . Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations [and] [o]btain evidence from a vocational expert . . . . [using] hypothetical questions that reflect the specific capacity/limitations established by the record as a whole . . . .

Tr. 89-90.

The second hearing took place on August 12, 2008. Tr. 95. On September 24, 2008, the ALJ issued an unfavorable decision, concluding that plaintiff's disability ended on December 31, 2003 and she had not been disabled since that date. Tr. 18-28. The ALJ applied the five-step sequential evaluation process to determine whether Davis was "disabled" within the meaning of the Social Security Regulations.[1] 20 C.F.R. § 404.1520, 1520(a) (1988). This process requires the ALJ to examine, in order, whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a medically determinable impairment that is severe or a combination of impairments that is severe; (3) has an impairment which meets or medically equals a condition contained within the

---

[1] The burden is on the plaintiff to prove disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See C.F.R. § 404.1505(a).

2

Agency's official listing of impairments (at 20 C.F.R. part 404, subpart P, appendix 1);

(4) has the residual functional capacity (RFC) to perform past relevant work; and (5) can

perform any other work based on vocational factors which include RFC, age, education,

and work experience.  See 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260, 264-

65 (4th Cir. 1981).

> At the first step of the analysis, the ALJ found that plaintiff
>
> [A]ttained the age of eighteen on September 30, 2003 and was eligible for
> supplemental security income benefits as a child for the month preceding
> the month in which she attained age eighteen. [Plaintiff] was notified that
> she was no longer disabled as of December 31, 2003, based on
> redetermination of disability under the rules for adults who file new
> applications.

Tr. 22.  At step two, the ALJ found that plaintiff had the following severe combination of

the following impairments: depression and oppositional defiant disorder.  Id.  At step

three, the ALJ determined that plaintiff's mental impairments, considered individually or

in combination, did not meet or medically equal one of the listed impairments found at 20

C.F.R. part 404, subpart P, appendix 1.  Id.  At step four, the ALJ conducted a detailed

analysis in order to determine plaintiff's RFC.  Tr. 23.  He concluded that plaintiff had

the RFC to perform a full range of work at all exertional levels but noted that she would

be "restricted to unskilled work secondary to concentration deficits and would only be

able to work in a setting where there is limited public contact and limited contact with co-

workers."  Tr. 24.

> The ALJ considered the opinions of lay witnesses regarding plaintiff's

impairments and limited ability to function, assessing the credibility of each witness and

determining the appropriate weight to accord his or her testimony.  Id.  Davis does not

dispute the ALJ's credibility findings and has not objected to the ALJ's assignment of

minimal weight to the lay witnesses' testimony. The ALJ also considered the medical opinions of plaintiff's treating physicians, evaluating physicians, and the state agency medical consultants and determined the proper weight to accord to each. Tr. 26. At step five, the ALJ used plaintiff's RFC, age, education, and work experience to create a hypothetical scenario which was presented to the vocational expert (VE) in order to determine whether a significant number of jobs existed in the national economy that plaintiff could perform. Tr. 27-28. Based on all of the evidence of record and the VE's testimony in response to the hypothetical, the ALJ determined that a significant number of jobs existed in the national economy that Davis could perform and therefore she was not disabled. Tr. 28.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 7-9, 12, 13. Plaintiff filed the instant action in federal court on November 11, 2011. On December 17, 2012, Magistrate Judge Thomas E. Rogers submitted an R&R recommending that the ALJ's September 24, 2008 decision be affirmed. See Mag. R&R, Dec. 17, 2012, at 14. Plaintiff filed timely objections to the R&R on January 7, 2013.

**B.  Davis' Medical History**

Plaintiff Tontalana Lavona Davis was born on October 1, 1985, and was twenty-two years old at the time of the second hearing before the ALJ. Tr. 517. She has an eighth grade education with no past relevant work. In December 2003, plaintiff was examined by state agency psychiatrist Dr. Vidya Upadhyaya. Tr. 301-04. Dr. Upadhyaya noted plaintiff's "long history of oppositional defiant disorder, intermittent explosive disorder, and depression [not otherwise specified]" as well as her history of

4

"noncomplian[ce] with medication and treatment recommendation." Tr. 301. Dr. Upadhyaya's assessment of plaintiff's mental status led her to conclude that she was alert, oriented, and cooperative with congruent affect and "no evidence of suicidal or homicidal ideation, auditory or visual hallucinations." Tr. 302-03. However, her report also stated that plaintiff "does not seem to be able to function adequately and would warrant a parapsychological evaluation to rule out any kind of deficiencies in intellectual functioning." Id. At the time of the examination, Davis reported that she was not taking any medications. Id. Dr. Upadhyaya completed an RFC assessment that indicated that plaintiff's mental impairments mildly restricted her ability to perform daily activities, resulted in moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or race, and that plaintiff did not experience episodes of decompensation. Tr. 317. The 2003 RFC assessment did not indicate any areas in which plaintiff's capabilities were markedly limited.

In August 2004, Dr. McCall, a state agency medical consultant, performed an RFC assessment after reviewing plaintiff's medical record. Tr. 408. The RFC assessment indicated that Davis suffered from depression not otherwise specified, presented anger control traits, and possible borderline intellectual functioning. Tr. 394-401. Based on MUSC treatment notes and her medical history, Dr. McCall concluded that plaintiff was capable of

> Mak[ing] simple work-related decisions plus could remember locations and simple work-like procedures . . . travel[ing] in familiar areas . . . ask[ing] simple questions and request[ing] assistance . . . be[ing] on-time and work[ing] [within] a schedule . . . attend[ing] to somewhere between a narrow and moderate range of [c]hanges in work routine . . . benefit[ing] from constructive input/criticism from supervisors and others . . . profit[ing] from a slower work-pace with fewer changes in work type and task . . . relat[ing] at least somewhat to co-workers . . . meet[ing] necessary

5

> neatness/cleanliness standards . . . attend[ing] to some changes in the work setting . . . avoid[ing] usual work-hazards . . . [and] do[ing] simple tasks without the need of special help or supervision.

Tr. 408.  Dr. McCall concluded that Davis "may miss occasional work-days and . . . may manifest immature behavior" but appeared to have "intact ability to do simple tasks as an adult."  Id.

Progress summaries completed by Drs. Johnette Simmons, Barbara Esby, and Debra Parka between June 2006 and May 2008 provide further insight into plaintiff's medical history and treatment history.  In a progress summary dated June 21, 2006, plaintiff reported getting married and having a baby.  Tr. 448.  She also reported no psychiatric hospitalizations during that quarter.  Id.  The summarizing physician indicated that plaintiff had been non-compliant with treatment recommendations and had restarted her medication two months earlier.  Id.  A progress summary dated September 15, 2006, described Davis as demonstrating "good insight into symptoms of mental illness and coping skills, but struggl[ing] with benefit of medications."  Tr. 449.  The report also stated that she was living independently in her own apartment and was able to maintain stability with little intervention from her case manager.  Id.  A progress summary dated May 28, 2008 reported that she was still living in her own apartment but was having difficulty with coping skills and complained of being stress over family issues.  Tr. 451.  Plaintiff reported compliance with medication during this time.  Id.

In January 2006, Dr. Carrie Kithianis completed a Mental Impairment Questionnaire outlining her clinical findings and opinions with regard to plaintiff's mental status.  Tr. 415.  Dr. Kithianis indicated that she had been seeing Davis monthly since October 2005, and that Davis had been a client at Mental Health Charleston since

March 2005.  Id.  Dr. Kithianis described Davis as demonstrating "mood lability, dysphoria, poor sleep, [and] periods of suicidality" and noted that she was not currently on medication due to pregnancy.  Id.  In August 2008, Dr. Kithianis completed a second questionnaire.  Tr. 467.  She reported that Davis was prescribed two medications, Prozac and Depakote, and that she continued to have "mood lability, irritability, and sleep disturbance" with "periods of suicidality."  Id.  In both questionnaires, Dr. Kithianis expressed the opinion that plaintiff was unable to meet competitive standards in numerous areas of functioning, seriously limited in her ability to interact appropriately with the general public and maintain socially appropriate behavior, had repeated episodes of decompensation within a twelve month period, and had significant restrictions in her activities of daily living and marked deficiencies in her concentration, persistence or pace.  Tr. 416-17, 419, 468-71.  In both assessments, Dr. Kithianis further opined that plaintiff's mental condition would cause her to be absent from a job for more than four days per month.  Tr. 419, 471.  In the 2008 questionnaire, Dr. Kithianis additionally indicated that plaintiff's mental impairment had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate.  Id. at 471.

## II.  STANDARD OF REVIEW

This court is charged with conducting a *de novo* review of any portion of the magistrate judge's R&R to which specific written objections are made.  28 U.S.C. § 636(b)(1).  The recommendation of the magistrate judge is not binding on this court, and this court may accept, reject, or modify the R&R, in whole or in part, or may recommit the matter to him with instructions for further consideration.  28 U.S.C. § 636(b)(1).

The district court must determine upon the record as a whole, whether the Commissioner's findings are supported by substantial evidence and whether the correct law was applied. 42 U.S.C. § 405(g) ("[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); see also Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); Teague v. Califano, 560 F.2d 615, 618-19 (4th Cir. 1977); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where the Commissioner's decision is supported substantial evidence, this court must affirm that decision, regardless of whether it agrees with the Commissioner. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Even when a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supports the decision. Id. at 775. "Ultimately, it is the duty of the administrative law judge reviewing a case . . . to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456. This court may not reverse the Commissioner's decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The court must uphold the Commissioner's decision so long as it is supported by substantial evidence. Blalock, 483 F.2d at 775.

### III.  DISCUSSION

On review, Davis argues that the ALJ failed:  (1) to give controlling weight to the opinions of plaintiff's treating physicians; (2) by relying on the testimony of the vocational expert, which was based on an improper hypothetical; and (3) by finding, at step 5, that there were significant jobs in the national economy that plaintiff could perform.  Pl.'s Objections to R&R 2-8.  The court takes these objections in turn.

**A.  Treating Physician's Opinions**

Davis argues that the ALJ failed to give proper weight to the opinions of Drs. Carrie Kithianis and Vidya Upadhyaya.  Specifically, she contends that the ALJ should have given controlling weight to the opinions expressed in two mental impairment questionnaires completed by Dr. Kithianis, plaintiff's treating physician, in January 2006 and August 2008.  Pl.'s Objections to R&R 2-3.

20 C.F.R. § 416.927(c)(2) states that more weight will generally be given to the opinion of a source who has examined the claimant than a non-examining source, and that even more weight will generally be given to a treating source since "these sources are likely to be the medical professionals more able to provide a detailed, longitudinal picture" of an individual's impairments. Generally, a treating physician's opinion is entitled to great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983).   The opinion of a treating physician will be given controlling weight if it is supported by accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir.

1996) (holding that a treating physician's opinion is not binding on the Commissioner but is nevertheless entitled to great weight and may be disregarded only if persuasive conflicting evidence exists on record to rebut it).

The ALJ may determine that a treating physician's opinion should not be afforded controlling weight because there exists some persuasive contradictory evidence to rebut it. Chater, 76 F.3d at 589.  If the ALJ makes such a determination, he must analyze and weigh all the evidence of record and consider the weight to be given to the physician's opinion.  In reaching this determination, he must consider and apply the following five factors:  (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion.  20 C.F.R. § 404.1527(d)(2)(i-ii) and (d)(3)-(5).  Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p, 1996 WL 374188 (July 2, 1996).

Davis argues that Dr. Kithianis' opinions as expressed in the mental impairment questionnaires were entitled to controlling weight because they were supported by an abundance of evidence in the record.  Pl.'s Objections to R&R 4.  She further contends that Dr. Upadhyaya's opinions are consistent with those set forth by Dr. Kithianis and thus the ALJ failed to properly consider these opinions when evaluating the nature and extent of plaintiff's impairments.  Id.

The ALJ considered Dr. Kithianis' responses in the two mental impairment questionnaires, but ultimately accorded these opinions little weight.  Tr. 25-26.  He explained,

> Dr. Kithianis never provided any indication in her treatment notes that the claimant was disabled.  [Her] opinions are unsupported by the weight of the medical evidence of record as her clinical findings are relatively benign and include findings of depressed mood and irritability. [She] appeared to rely on the claimant's subjective complaints in forming her opinion, which . . . are not reliable.

Tr. 26.  The magistrate judge concluded that the ALJ's decision was supported by substantial evidence because the medical evidence, including notes taken by Dr. Kithianis, revealed that plaintiff had a history of non-compliance with treatment.  See Mag. R&R at 10.  Furthermore, Davis had not been hospitalized for psychiatric issues since turning eighteen, had been married and had another child, and treatment notes taken during the relevant periods indicated that plaintiff benefitted from her medications and admitted to feeling calmer and better.  Tr. 26-27.  The magistrate judge found that the ALJ properly discussed his reasons for according little weight to Dr. Kithianis' opinion set forth in the questionnaires and considered the opinions of all treating and examining physicians on record with his reasoning for the amount of weight he accorded to each.  See Mag. R&R at 11.

This court agrees with the magistrate judge and finds there is substantial evidence to support the ALJ's decision not to accord controlling weight to Dr. Kithianis' opinions.  While the opinions expressed in the two questionnaires suggested Davis was suffering from near-disabling mental functional limitations, the treatment notes in the record— including notes taken by Dr. Kithianis—indicate that she demonstrated a desire to get better and in fact showed signs of progress at various points throughout her treatment.

Tr. 301-04, 364-65, 368-70, 377, 384-92, 409, 425, 432-35, 448-51, 454-56, 460-63, 474-78, 481-83, 487.  There is also ample evidence in the record that Davis had a history of non-compliance with both treatment and medication. Tr. 301-04, 375, 376, 378, 427, 431, 448-51, 455-57, 462-63, 481-83, 488-89.  The ALJ's decision to accord little weight to the opinions of Dr. Kithianis was supported by substantial evidence.

Likewise, the court finds that the ALJ's decision to give little weight to Dr. Upadhyaya's opinion was supported by substantial evidence.  In December 2003, Dr. Upadhyaya conducted a consultative examination on plaintiff.  Tr. 303.  Plaintiff focuses on the portion of Dr. Upadhyaya's report which notes that plaintiff has a history of oppositional defiant disorder, intermittent explosive disorder, and depression not otherwise specified, and "did not seem to be able to function adequately and would warrant a parapsychological evaluation to rule out any kind of deficiencies in intellectual functioning."  Id.  However, the rest of the report presents a more comprehensive picture than that statement read in isolation.  For example, Dr. Upadhyaya's report also noted that plaintiff "claim[ed] to have trouble functioning yet continue[d] to live by herself."  Tr. 301.  Some of Dr. Upadhyaya's other observations include:  that plaintiff was alert and oriented; that her affect was congruent; that there was no evidence of suicidal or homicidal ideation, auditory or visual hallucinations; that she was cooperative during her interview and made good eye contact; and that she stated "that she now felt okay."  Tr. 302-03.  Dr. Upadhyaya's report is not as lopsided as Davis would suggest.  Furthermore, Dr. Upadhyaya's notes regarding plaintiff's mental health conditions related to her mental health history, not necessarily the conditions from which she was suffering at the

time of the report.  Thus, the ALJ's decision not to accord great weight to that particular

segment of Dr. Upadhyaya's report is supported by substantial evidence.

### B.  Vocational Expert Hypothetical

Plaintiff next contends that the ALJ erred in relying on the testimony of the

vocational expert (VE) because the hypothetical posed by the ALJ did not include all of

plaintiff's limitations and restrictions, especially those outlined by Dr. Kithianis.  Pl.'s

Objection to R&R 6-7.  At plaintiff's hearing in 2008, the ALJ posed the following

hypothetical to the VE, Dr. Arthur Schmidt:

> Assume the claimant is 22-years-old with an eighth grade education.
> Assume she has no exertional limitations.  Assume she would have
> concentration deficits which would limit her to unskilled work.  Assume
> further she would only be able to work in a setting where there was limited
> public contact and limited contact with co-workers.

Tr. 529-30.

Based on this hypothetical, the VE responded that plaintiff would be unable to do

her past relevant work as a fast food worker, but would be able to work in a companion

position, a janitorial position, and as a laundry worker.  Tr. 530.  The ALJ then posed a

second hypothetical, in which he included a substantial impairment of the ability to

respond appropriately to supervision in co-workers.  Id.  With this additional impairment,

the VE concluded the individual would be unable to perform any job in the national

economy.  Tr. 530-31.  Plaintiff's attorney then posed a third hypothetical, using the

elements of the ALJ's second hypothetical, with the additional limitation that the

individual would be absent from work more than four days per month.  Tr. 531-32.  The

VE concluded that the individual would be unable to perform any job in the national

economy.  Tr. 532.

Davis argues that the ALJ's first hypothetical failed to include all of plaintiff's limitations as established by the two mental questionnaires completed by Dr. Kithianis. Pl.'s Objection to R&R 6. She points to the VE's concession, during cross examination, that even the unskilled jobs available to the individual described in the first hypothetical would require the ability to understand, remember and carry out simple instructions. Tr. 530. If the ALJ had included the additional limitations set forth in the mental impairment questionnaires completed by Dr. Kithianis, plaintiff argues, the VE would have testified that the hypothetical individual would be unable to perform any job in the national economy. Pl.'s Objection to R&R 7.

Once a claimant makes a prima facie showing of disability by showing her inability to return to her past relevant work, Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983), the burden then shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in meeting its burden at step five of the sequential evaluation. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The VE's opinion must be "based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Id. at 50; see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993); Alexander v. Apfel, 14 F. Supp. 2d 839 (W.D. Va. 1998). The ALJ has discretion in framing the hypothetical questions so long as they are supported by substantial evidence in the record and reflect those impairments supported by the record. See Califano, 599 F.2d at 1312; see also Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687,

690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993). However, the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothetical does not conform to the facts. Califano, 599 F.2d at 1309.

The ALJ's first hypothetical presented to the VE was both appropriate and supported by substantial evidence. As previously discussed, the ALJ properly accorded little weight to Dr. Kithianis' responses to the two mental impairment questionnaires and his determination was supported by substantial evidence. The ALJ was not required to include the limitations set forth by Dr. Kithianis in the mental impairment questionnaires when formulating the hypothetical questions for the VE, because the ALJ determined that Dr. Kithianis' responses were inconsistent with the evidence of record and properly discussed how he evaluated and weighed the evidence. Thus, the ALJ's reliance on the first hypothetical was not error.

### C.  Step Five of Sequential Evaluation

Plaintiff's final objection can be quickly addressed, as it also relates to the hypothetical posed to the VE. Plaintiff argues that because the hypothetical posed to the VE did not include all of plaintiff's limitations as established by Dr. Kithianis, and since the ALJ relied on the VE's response to that flawed hypothetical at step five of the sequential analysis, the Commissioner did not meet its burden and the ALJ erred in finding that plaintiff was not disabled. Pl.'s Objection to R&R 7.

As previously explained, the ALJ properly assessed plaintiff's RFC and did not err in relying on the first hypothetical posed to the VE. The ALJ discussed in depth his consideration of the evidence in arriving at the RFC, and his finding is consistent with 10 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ's decision to accord little weight to Dr.

Kithianis' opinion that plaintiff was unable to perform any work was proper, and the ALJ adequately set forth his rationale for doing so.  Thus, he was not required to include the limitations set forth in Dr. Kithianis' statements when formulating his hypothetical for the VE, and accordingly, his reliance on the VE's response in conducting the necessary assessment at step five was proper.  The Commissioner met his burden under step five of the sequential evaluation and the ALJ's finding that plaintiff was not disabled is supported by substantial evidence.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R and **AFFIRMS** the Commissioner's decision denying benefits.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 21, 2013**
**Charleston, South Carolina**

16